MAYS v. BOARD OF COM'RS OF CREEK COUNTY et al.

No. 20269.    Opinion Filed May 16, 1933.

Rehearing Denied July 12, 1933.

L. O. Lytle, K. L. Lytle, Chas. E. Mc-Pherren, J. D. Lydick, and R. K. Robertson, for plaintiff in error.

Sebe Christian, for defendants in error.

SWINDALL, J. Joseph Mays, plaintiff in error, commenced an action in the district court of Creek county, against the defendants in error, to recover United States Liberty Bonds, or their value in lieu thereof, in the event the immediate possession of said bonds as described in plaintiff's petition could not be had. The record discloses that the plaintiff was the owner of 39 United States government Liberty Bonds, each being for the principal sum of $1,000, each being payable to bearer and each having maturity date not earlier than 1933. These bonds were deposited in the First National Bank of Bristow, Okla., by the plaintiff for safekeeping. The cashier of the bank, desiring to secure a deposit of additional funds of Creek county, on March 25, 1927, presented said bonds to the county treasurer of Creek county. at his office in the courthouse building, during the business hours of the day as the property of said bank, and said county treasurer accepted the pledge of said bonds by the cashier of said bank in lieu of a surety bond, and, in consideration of the delivery of said bonds to said county treasurer by the cashier of said bank, the deposit of public funds of Creek county, Okla., was increased in said bank from $32,000 to $73,-500; that continuously since the receipt of said bonds by said county treasurer, the bonds had been kept in the safe in the office of said county treasurer, and continuously since said time said county treasurer has kept a deposit of the public fund of Creek county in said bank approximately equivalent to the amount of bonds pledged to him as security for said deposit. That prior to the date of the delivery of said bonds to the county treasurer, he had on several occasions received bonds and securities from other banks in Creek county, pledged for security of county deposits, and was at that time in possession of other bonds so pledged by the First National Bank of Bristow, Okla., in prior transactions. That on the date said bonds were delivered by the cash-

ier of said bank to said treasurer, and for a long time prior thereto, said First National Bank of Bristow, Okla., had been approved by federal bank examiners as being financially sound and continued to be so approved until April 25, 1928; that said bank had been designated as an official county depository; that said bonds had been in the custody of the First National Bank of Bristow, Okla., for a long time prior to the date they were delivered by the cashier of said bank to said county treasurer, and had been referred to as being the property and assets of the bank in examination reports of federal bank examiners; that at the time of the receipt of said bonds, the county treasurer had no reason to believe that the bank was not the owner thereof, and had no notice that any other person had rights therein or claimed to be the owner thereof; that said bank failed and ceased to do business as a bank on April 25, 1928, and on that date was taken over by the Comptroller of the Currency; and that on said date the county treasurer of Creek county was in possession of $54,500 worth of bonds, including the Liberty Bonds involved in this action, and on said date had on deposit to his credit as county treasurer of Creek county, Okla., in said bank the sum of $54,000, and that no part of said deposit has been paid or tendered to him as county treasurer of Creek county.

The defendants were legally served with summons and did not answer within the time provided by law, and default judgment was rendered against them in favor of plaintiff. Thereafter, and within two days of the rendition of the default judgment, defendants filed a motion to vacate and set aside said default judgment, and thereafter filed supplemental motion to vacate and set aside said default judgment. The default judgment was rendered on the 4th day of October, 1928. Thereafter, on the 10th day of October, 1928, at the same term of court, the motions to vacate the default judgment came on for hearing, and after a hearing thereon were sustained by the court, to which the plaintiff excepted. The journal entry of judgment sustaining said motions to vacate the default judgment recites:

"Upon a hearing of the matters therein presented the court finds that said default judgment so made and entered on said day and date should be by this court set aside and held for naught."

The testimony taken at said hearing is not contained in the case-made. Thereafter plaintiff filed his amended petition

alleging that he was the owner of and entitled to immediate possession of the property therein described, that defendants after due demand unlawfully detained the possession of the property from plaintiff. Answer of defendants was by way of general denial, and further alleged that during the period beginning March 25, 1927, and ending March 9, 1928, and for a long time prior thereto, the First National Bank of Bristow, Okla., a banking corporation duly organized and existing under and by virtue of the laws of the United States, with its principal place of business located in Bristow, Creek county, Okla., was engaged in the banking business in said city, and alleged the delivery of the bonds to Ralph H. Blake, as county treasurer of Creek county, to secure a deposit of county funds in said bank, as above stated, and that said bonds were negotiable instruments, and that the defendant Ralph Blake, as county treasurer of Creek county, was a holder in due course to the amount of said county deposit in said bank. Plaintiff replied by a general denial, except admitted the defendant Ralph H. Blake as county treasurer had the bonds in his possession continuously since March 25, 1927, and admitted that he was county treasurer of Creek county, and admitted that the bonds were all written negotiable instruments not matured, payable to bearer, and title and ownership were transferable by delivery, and that the copy attached to the answer is a true and correct copy of said bonds and coupons except as to serial numbers. The reply further alleged that the said Ralph H. Blake, county treasurer, took said bonds contrary to the specific public policy of the state and contrary to the specific law of the state, and that the contract whereby said bonds were taken was illegal and void, that said bonds were not taken in due course or in good faith, nor for a valuable consideration, that at the time of taking of said bonds, Ralph H. Blake, individually, and as county treasurer, had notice and knowledge of facts which would put a reasonably prudent person upon inquiry that said bonds were the property of and owned by the plaintiff, and prayed judgment in accordance with the prayer of plaintiff's petition. On the day of trial, by permission of court, defendants filed a supplemental answer and pleaded in addition to their previous answer that during the period beginning on the 25th day of March, 1928, and ending on May 1, 1928, plaintiff well knew that the bonds had been pledged by said bank and to Ralph H. Blake,

county treasurer, as security for a deposit of county funds, and that said bonds had been left with said bank by the plaintiff with the understanding and agreement on the part of plaintiff and the bank that the same might be used for the purpose of pledging the same as the assets of the bank for security for public funds, or any other like purpose; that plaintiff has asserted a claim against the bank for the value of said bonds, and intends to prosecute his claim and collect same from the bank, and employed counsel for that purpose and elected to pursue such manner and by virtue thereof he is estopped to assert ownership and claim possession of the bonds. A jury was waived and upon the issue joined, the cause was tried to the court, and judgment rendered for defendants, motion for new trial was filed and presented by the plaintiff and considered by the court and overruled, notice of appeal given in open court, and plaintiff brings the cause here for review.

Plaintiff in error first contends that the court committed error in setting aside the default judgment. A motion to vacate the default judgment was filed at the same term of court and within two days after the rendition of the judgment, and the record does not contain the evidence adduced thereon and upon which the court rendered its judgment in vacating the default judgment. In the case of Lovejoy v. Stutsman, 46 Okla. 122, 148 P. 175, this court, in the third syllabus paragraph, said:

"It is the policy of the law to have every litigated case tried upon its merits and default judgments are viewed with disfavor."

And in the case of Nave v. Conservative Loan Co., 117 Okla. 85, 245 P. 65, in the syllabus, this court said:

"An application to vacate a default judgment and to be allowed to defend is addressed to the sound discretion of the court, and will not be disturbed on appeal, unless it clearly appears that the court has abused its discretion."

Trial courts are invested with broad discretion in the granting of new trials. Sneed v. Yarbrough, 123 Okla. 17, 253 P. 40. So, we hold that the trial court did not abuse its discretion in vacating the default judgment.

There are several other assignments of error presented in the brief of plaintiff which go to the proposition that the defendant Blake, as county treasurer, was not a holder in due course: (1) Because a national bank does not have power to pledge its as-

sets to secure a deposit of public funds of a county; (2) that the proviso in section 1, chapter 99, Session Laws of 1925, relating to banks and banking, requiring the unanimous consent of the board of directors of a bank, specified by resolution duly entered in the minute book of such bank, before such bank is authorized to pledge the assets of such bank as security for township, city, town, school district, benefit and fraternal association funds, deposited in such bank, in all cases where no surety bond is given to secure such deposits, applies to county depositories provided for in section 1, chapter 88, Session Laws 1925, amending section 5727, C. O. S. 1921; (3) because the securities accepted by the county treasurer in the instant case in lieu of a surety bond do not bear the approval of the county judge and the county attorney of Creek county, Okla., as required by the last mentioned section; and (4) that the bonds of plaintiff were feloniously taken by the cashier of the bank and pledged as the property of the bank and such negotiation does not constitute the defendants holders in due course. We have carefully read the cases presented by counsel for plaintiff and defendants upon this issue, and we will consider the propositions in the order stated.

In June, 1892, the Supreme Court of Kansas, in the case of Interstate National Bank v. Ferguson, Treasurer (Kan.) 30 P. 237, in two paragraphs of the syllabus held that:

"Section 87 of the first-class city act, which provides for the mayor and council designating a bank as a depository for the public money of the city, is not unconstitutional or void."

And that:

"A national bank may be a depository for such funds, and may lawfully agree to pay interest on the deposits and to give a bond for their security."

In August, 1898, we find this question was before the United States Circuit Court, District of Nebraska, in the case of State of Nebraska v. First National Bank of Orleans, 88 Fed. 947, wherein the court held that:

"Giving bond to secure funds deposited with it is within the power of a national bank, and sureties on such bond are liable."

In the case of Burrowes v. Nimocks, 35 Fed. (2d) 152, the Circuit Court of Appeals, Fourth Circuit, held that:

"Where vice president of national bank was expressly authorized to obtain deposit of county funds, authority carried by nec-

essary implication power to give security necessary to obtain deposit, and hence pledging of notes held by bank as security for county deposit was not void because not authorized by directors and beyond powers of vice president."

The cashier of a national bank is an "executive officer" and is presumed to have all the authority he exercises in dealing with executive functions legally within the power of the bank, and in transactions within the scope of his authority he acts in a representative capacity. First National Bank of Kiowa v. Mee, 126 Okla. 265, 259 P. 523. In the case of Sneeden v. City of Marion, Ill., 58 Fed. (2d) 341, the United States District Court, Eastern District of Illinois, held that:

"National banks have power to pledge assets to secure deposit of public funds."

This case arose under the laws of Illinois which authorized a bank to accept deposits of public funds and pledge its assets as security therefor. At page 346 of the report, United States District Judge Wham uses this language:

"The greater weight of the court decisions in the various states supports the general principle that banks have power to secure public funds by a pledge of their assets as incidental to the banking business without express statutory authority therefor."

And cites a number of authorities to sustain the rule announced. He then says:

"While the decisions cited are by state courts and deal with the powers of banks other than national banks, they deal with fundamental principles of banking and in the absence of controlling federal decisions are entitled to great weight in arriving at a correct interpretation of the National Banking Act and the powers thereby conferred. That the trend of the decisions is in favor of the interpretation giving power to banks to pledge their assets as security for deposits of public funds has been recognized by recent decisions of the federal courts. Burrowes v. Nimocks, County Treasurer, 35 F. (2d) 152 (C. C. A. 4); Schumacher v. Eastern Bank & Trust Co., 52 F. (2d) 925 (C. C. A. 4); See, also, Smith v. Baltimore & Ohio Railroad Co., 48 F. (2d) 861 (D. C. Pa.)."

In the case of Farmers & Merchants State Bank of Ogilvie, Respondent, v. Consolidated School District No. 3, Kanabec County, Appellants, 174 Minn. 286, 219 N. W. 163, 65 A. L. R. 1407, the Supreme Court of Minnesota held that:

"A commercial bank organized under the laws of Minnesota has no power to pledge

any of its assets, particularly bills receivable, to secure the repayment of deposits, except as it is given by statute with respect to the deposit of state and municipal funds. As to them the power does not extend to assets other than those specifically authorized to be pledged."

We call attention to this case for the reason that the opinion discusses a number of the decisions of other states relating to this subject and the power of a bank to pledge its assets for deposit of public funds, acting within the implied powers of the bank, and in the foot-note at 65 A. L. R. 1412, are annotations reviewing a number of cases, sustaining the view that the Legislature may authorize banks to pledge certain assets of the bank in lieu of a surety bond to secure the performance of its obligations as a depository of public funds. In the case of Huntsville Trust Co. v. Noel (Mo.) 12 S. W. (2d) 751, the Supreme Court of that state held that:

"Trust company, seeking to qualify as a county depository under Rev. St. 1919, secs. 9582-9596, had authority to pledge United States bonds, constituting part of its assets, to secure the performance of its obligations as depository, under section 9585, requiring depository to execute surety bond with solvent sureties who own unincumbered real estate, with provision that 'court may accept in lieu of real estate as security bonds of United States'; proviso being added by Laws 1891, p. 104."

The leading cases which announce the minority rule to the effect that banks may not pledge assets to secure deposits are Commercial Banking & Trust Co. v. Citizens Trust & Guaranty Co., 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166; Divide County v. Baird, Receiver, 55 N. D. 45, 212 N. W. 236, 51 A. L. R. 296; Farmers' & Merchants' State Bank v. Consolidated School District, 174 Minn. 286, 219 N. W. 163, 65 A. L. R. 1407. However, as stated before, the Supreme Court of Minnesota points out specifically that the rule announced in these cases does not apply in the event the bank is authorized by law to pledge its assets for public funds. We do not feel that any of the cases announcing the minority rule are in any way persuasive in the case under consideration, for the reason that we are governed by the rules declared by the federal courts in so far as they announce a rule relative to national banks, and we are controlled by our statute in so far as state banks are concerned.

It is clear that under section 5727, amended by section 1, chapter 88, Session Laws

1925, p. 138, it is the duty of the county treasurer to deposit daily all the funds and money of whatever kind that shall come into his possession by virtue of his office as such county treasurer in his name as such county treasurer in one or more banks, either state or national, in the county and designated by the board of county commissioners as the county depositories, and that he shall not deposit of such funds in any one bank at one time a greater amount than the capital stock and surplus of said bank. The section also specifically authorizes the board of county commissioners to take from each such bank a surety bond of some surety company, authorized by the proper authorities of the state of Oklahoma to do business in said state, in a sum equal to the largest approximate amount that may be deposited in each bank respectively at any one time, and that in lieu of said surety bond or in addition thereto, security may be taken consisting of United States bonds, state bonds or warrants, county bonds or warrants, or other bonds or warrants issued by any municipality under authority of and in compliance with the statutes of Oklahoma, provided that all said warrants shall have been issued pursuant to a legal appropriation.

We hold that, under the rule as announced by the federal courts, a national bank has authority to pledge its assets to secure deposits of such public funds, and that under the National Bank Act in force at the time the United States bonds in this case were deposited in the First National Bank of Bristow, Okla., the bank had power to secure said public funds by a pledge of its assets as incidental to the banking business, without express statutory authority therefor, and that such power can be denied only by the Congress of the United States in the event the laws of the state authorize a bank organized under the laws of the state to pledge its assets to secure a deposit of public funds, for then such state laws cannot deny to national banks organized and doing business in the state under the National Bank Act equal privileges. This seems to be settled by the decisions of the Supreme Court of the United States in First National Bank of Bay City v. Fellows, Attorney General, on the relation of Union Trust Co., 244 U. S. 416, 61 L. Ed. 1283; and State of Missouri, at the relation of the Burns National Bank of St. Joseph v. A. B. Duncan, Judge of the Probate Court of Buchanan County, Mo., 68 L. Ed. 881.

Section 1, ch. 99, Session Laws 1925, p.

147, relating to banks and banking, has no application to county depositories of public funds. Such was the holding of this court in Maryland Casualty Co. v. Board of County Commissioners, 128 Okla. 58, 260 P. 112. While the section of our Code under consideration in the decision cited has been amended since that cause of action accrued, the rule of law announced therein still applies to the facts in this case. Section 5727, C. O. S. 1921, relating to county depositories, was amended in 1925. There is in the amended act the proviso:

"That in lieu of said surety bond, or in addition thereto, security may be taken consisting of United States bonds, state bonds or warrants, county bonds or warrants, or other bonds or warrants issued by any municipality under authority of and in compliance with the statutes of Oklahoma; provided, that all said warrants shall have been issued pursuant to a legal appropriation. * * * And all securities accepted in lieu of surety bonds shall bear the approval of the county judge and the county attorney."

This act carries the emergency, and was approved April 2, 1925. At the same session of the Legislature, chapter 99, amending section 2, chapter 137, Session Laws 1923, relating to banks borrowing money, passed, carrying the emergency and approved April 8, 1925. The proviso in that act is that:

"Any bank, by the unanimous consent of its board of directors expressed by resolution duly entered in the minute book of such bank, may pledge the assets of such bank as security for townhsip, city, town, school district, benevolent or fraternal association funds deposited in such bank in all cases where no surety bond is given to secure such deposits."

This proviso states specifically the security any bank by the unanimous consent of its board of directors may pledge the assets of such bank to secure. It does not relate to county depositories and does not include government bonds of the United States, and we are not authorized to amend said section by judicial construction by reading into it "bonds of the United States." It will be noted further that in 1931, the Legislature amended the section relating to banks borrowing money, the amending act being chapter 40, Session Laws 1931, p. 183, and the proviso in the amended section being:

"* * * Any bank, by the unanimous consent of its board of directors, expressed by resolution duly entered in the minute book of such bank, may pledge the assets of such bank, except promissory notes, as security for postal savings funds, government funds, Indian funds under the control of the federal government, state funds of the state of Oklahoma, county, township, city, town, school district, benevolent or fraternal association funds deposited in such bank in all cases where no surety bond is given to secure such deposits."

This last amendment will be considered only in so far as it may shed light upon the issue presented that chapter 99, Session Laws 1925, repeals chapter 88, Session Laws 1925, by implication. In the case of State ex rel. Powers v. Wenner, County Treas., 121 Okla. 190, 249 P. 408, we held that:

"Repeals by implication are not favored, and, in construing separate enactments of the Legislature, that conclusion as to their intent must be reached, if possible, so as to give effect to each provision, and an earlier statute will not be held to be repealed by a later one by implication, unless the conflict between the two is irreconcilable."

So, we think it was the intent of the Legislature that chapter 99, Session Laws 1925, did not repeal by implication chapter 88, relating to county depositories, for the reason that the two acts were passed by the same session of the Legislature, and certainly, if the Legislature had intended that, before a bank organized under the laws of the state should be permitted to pledge any of its assets as security for a deposit of county funds, the board of directors must by unanimous consent agree to such pledge and enter the same upon the minutes of the bank, it would have expressed such intent in said act, which it did not do, but later, in the act of 1931, included in the proviso funds of the state and county.

Relative to the contention that the securities pledged in lieu of surety bond, or in addition thereto, shall bear the approval of the county judge and the county attorney, the county treasurer testified that the county judge and county attorney approved the securities, which approval he had destroyed and could not produce at the trial. Under this evidence the terms of the act in this respect were fully complied with. However we do not think that an irregularity of the county treasurer in accepting the United States bonds without the approval of the county judge and county attorney would affect the issues in this case. It was evidently the intent of the Legislature, in requiring the securities to be approved by the county attorney and county judge, to protect the public funds of the county, and in the event

the county treasurer should accept such security without the approval of said officers and the same were not valid bonds, then recourse might be had against the treasurer for such failure.

This leads us to a consideration of the fourth proposition, that the bonds of plaintiff were feloniously taken by the cashier of the bank and pledged as the property of the bank, and such negotiation does not constitute the defendants holders in due course. In paragraph 1052 of volume 8, Corpus Juris, page 796, the author says:

"Inasmuch as a negotiable bill or note duly executed and delivered and payable to bearer or indorsed in blank passes by delivery, it is well settled that such a bill or note is enforceable by a bona fide purchaser, and he is entitled to the proceeds thereof, although he obtained it through one not the owner who had stolen it or otherwise unlawfully obtained it, and this is the rule under the Negotiable Instruments Law."

In 9 Corpus Juris, p. 64, we find the following language:

"The pledgee of negotiable bonds before maturity without notice of any defect of title, as collateral security for a loan or debt, is entitled to hold such paper, to the extent of his loan or debt, with the same rights and immunities as an ordinary holder of commercial paper taken by purchase in good faith, for value, and before maturity; and it is not material whether the evidence of the principal debt is in negotiable form or not. This rule applies to bonds payable to bearer acquired in the regular course of business as collateral for current indebtedness and on which there are thereafter actual advances made by the holder; and a bona fide holder of such bonds is entitled to demand payment of coupons falling due before maturity of the debt which the bonds were pledged to secure. Where an agent, contrary to the purpose for which bonds are placed in his hands, pledges them as collateral security for his own debts, and such bonds are negotiable in form, the pledgee who has taken them without notice holds in good faith and for value."

The rule is stated in 3 R. C. L. p. 1000, 1001, in very similar language. One of the leading cases we have found upon the subject is Ehrlich v. Jennings, 78 S. C. 269, 13 A. & E. Cas. Ann. 1166, and many authorities supporting the opinion are found in the note to 13 A. & E, Cas. Ann., p. 1172. The first and second paragraphs of the syllabus are as follows:

"The rule that one who steals personal property cannot convey to a purchaser, however innocent, any title to the property as against the true owner, does not apply to a stolen negotiable instrument which, when acquired by a purchaser in good faith before maturity and without notice, may be held by the purchaser against the world.

"A coupon bond of the state of South Carolina, valid in its inception, is a negotiable security, as to which the issuing state incurs the same responsibilities as individuals or corporations in respect to their negotiable securities, and the title of a bona fide purchaser of such a bond before maturity is in no wise affected by the fact that the bond was surrendered to the state treasurer by an antecedent holder and subsequently stolen and put in circulation, although the theft of the bond was made possible by the failure of state officers to cancel the surrendered bond in accordance with statute."

In the case of Southwest National Bank of Commerce v. Todd, 79 Okla. 263, 192 P. 1096, we held that:

"One who takes a negotiable promissory note before maturity as collateral security is a purchaser for value, and unaffected by any equities between the original parties to the note, of which he had no notice.

"Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or of circumstances sufficient to put him upon inquiry, will not defeat his title; that result can be produced only by bad faith on his part."

See, also, Stevens v. Grisso, 91 Okla. 154, 216 P. 671.

There is no dispute that the bonds were negotiable in form, and we think that the defendants were holders in due course under section 7722, C. O. S. 1921:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"First: That it is complete and regular upon its face;

"Second: That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"Third: That he took it in good faith and for value;

"Fourth: That at the time it was negotiated to him, he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

As said by the trial court:

"This case, it is true, is unfortunate; but taking my view of it, taking any view of it that you may, judgment must be for the defendants, if it was in due course, and I

think it was. I am satisfied the entire transaction was in due course of business. Of course, there may be some slight irregularities, but not enough to affect the transaction in any way. I am satisfied the bonds were acquired in due course and in good faith. There is nothing to contradict the good faith of the county treasurer in taking the bonds. * * *"

For these reasons, the judgment is affirmed.

RILEY, C. J., CULLISON, V. C. J., and McNEILL, OSBORN, BUSBY, and WELCH, JJ., concur. ANDREWS, J., dissents. BAYLESS, J., absent.

----

### On Rehearing.

McNEILL, J. (specially concurring). Joseph Mays, plaintiff in error, instituted an action in replevin to recover Liberty Bonds in the district court of Creek county. The Honorable Frank Mathews, being assigned as judge on November 19, 1928, rendered judgment in favor of the board of county commissioners of Creek county and Ralph H. Blake, county treasurer of said county, defendants in error, denying relief to said plaintiff in error.

This court, on February 2, 1932, in an opinion by Vice Chief Justice Clark, reversed the action of the trial court. A petition for rehearing was filed, and thereafter the cause was set down for oral argument. Thereafter, Tomerlin & Chandler, Trey Shelton, and Richard W. Fowler filed a brief amici curiae in support of the petition for rehearing. Nowlin, Spielman & Thomas and the Attorney General filed separately a brief amicus curiae.

On January 7, 1933, I filed a dissenting opinion to the majority opinion. This court, subsequent thereto, has granted a rehearing, and delivered its majority opinion written by Mr. Justice Swindall on May 16, 1933. I desire to specially concur in this majority opinion, and incorporate herein the views which I heretofore expressed in my dissenting opinion.

It appears that Joseph Mays filed 39 Liberty Bonds of the par value of $1,000 each, with the First National Bank of Bristow for safekeeping. The cashier of said bank thereafter, in March 1, 1927, took said bonds to the office of the county treasurer of Creek county and asked for a county deposit. The First National Bank of Bristow had been designated by the board of county commissioners as a county depository. The county treasurer gave said cashier, as a representative

of said bank, a deposit of county funds equal to the value of said bonds, to wit, $39,000, and accepted said bonds as collateral security for said deposit. The bank failed in April, 1928, and at that time the county had on deposit in said bank $54,000 of county funds, and the county treasurer held $54,500 in bonds, including the bonds of Joseph Mays. The bonds were negotiable, payable to bearer. They were not the property of the bank.

Plaintiff in error insists that the county treasurer was not a holder in due course; that the First National Bank of Bristow was not authorized under the laws of Oklahoma to pledge the bonds in question as security for a county deposit; that chapter 99, Session Laws 1925, and chapter 88, Session Laws 1925, should be considered together, and that the word "county" should be impliedly read into section 4144, C. O. S. 1921, as named by said chapter 99, Session Laws 1925.

It is contended by the Attorney General that chapter 99, Oklahoma Session Laws 1925, is not applicable to the security pledged by a bank to secure county deposits; that said chapter is a general statute, while chapter 88, Oklahoma Session Laws 1925, is a special statute, and the special statute should be held to be the governing statute, and in support thereof, cites Maryland Casualty Co. v. Board of Commissioners, 128 Okla. 58, 260 P. 1112; also, that chapter 99 is applicable only to state banks; that the state is without authority to provide that a national bank cannot pledge its assets to secure its deposits, or that it can only pledge its assets with the unanimous consent of its board of directors; that said bonds were negotiable, and that the county was a holder in due course.

A reading of chapter 99, Session Laws 1925, shows that the Legislature did not make the proviso in reference to the pledging of the assets of said bank as security applicable either to state or county deposits. It specifically provides, to wit:

"No bank, banker or bank official shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security or by selling or transferring any of the assets of any insolvent bank in consideration of any deposit in such bank; provided, any bank, by the unanimous consent of its board of directors expressed by resolution duly entered in the minute book of such bank, may pledge the assets of such bank as security for township, city, town, school district, benevolent or fraternal association funds deposited in such bank in all cases

where no surety bond is given to secure such deposits. * * *"

Said chapter, requiring the unanimous consent of the board of directors of the bank before pledging securities to secure public deposits, is not applicable to state or county deposits. This provision was not effective until the enactment of chapter 40, Session Laws 1931. This was the legislative construction placed upon said chapter; otherwise there was no necessity for the enactment of said chapter 40, Session Laws 1931.

In the Maryland Casualty Co. Case, supra, this court held that section 4144, C. O. S. 1921, was a general statute, and section 5727, C. O. S. 1921, was a special statute. Chapter 99, S. L. 1925, is an amendment to section 4144. Chapter 88, Session Laws 1925, is an amendment to section 5727. Both acts were passed by the same Legislature. Chapter 88, Oklahoma Session Laws 1925, contains substantially the same language as found in section 5727, C. O. S. 1921, supra. Chapter 88 relates to the pledging of assets to secure county deposits. Chapter 99 makes no provision for county deposits and operates on the subjects therein embraced. The two acts should be construed together, but the proviso in the general act is not inconsistent with the special act because the proviso makes no reference to county deposits. The opinion in this case conflicts with the case of Maryland Casualty Company v. Board of Com'rs, supra.

Section 24, title 12, Banks and Banking, U. S. Code Annotated, provides that national banks shall be authorized to exercise by its board of directors, or its duly authorized officers and agents, subject to law, all such incidental powers that shall be necessary to carry on the business of banking, etc. Burrowes v. Nimocks, County Treas., 35 F. (2d) 152, is authority for the proposition that the national bank is authorized under its general powers to pledge its assets to secure the county deposits, and that the active vice president, as managing officer of the bank, had authority without special authorization to obtain a loan to the bank and to pledge the notes which it held as security for the loan without the special authority from the board of directors. National banks are instrumentalities of the federal government, and their affairs cannot be frustrated by state laws. Section 4144, C. O. S. 1921, as amended, has no application to national banks, which are federal agencies. Section 4144 was designed to protect the bank and its creditors, and was not intended to limit public depositories or the power and duty of public officers. It has no application to national banks.

The bank officials took the special deposit without a compliance with section 4144, but this does not make the transaction illegal and void. The bank could not be heard to urge nonliability because it received the benefits of said transaction. The most that could be urged was that the act of the bank cashier was ultra vires, but this plea would not be available to the bank after it had received the benefits of this transaction. It was not incumbent upon the county treasurer to prove that the resolution was adopted. If he was acting in good faith, and there is no evidence or insinuation to the contrary, he had the right to presume integrity on the part of the bank officers. First National Bank of Kiowa v. Mee, 126 Okla. 265, 259 P. 523.

The bonds were negotiable. It is my opinion that it was not the duty of the county treasurer to investigate whether or not the cashier of the national bank had the unanimous consent of the board of directors of the bank to pledge the security in question to secure the county deposit of said bank. There is nothing to indicate that the county did not take the bonds before maturity for value, in good faith, and without notice of any defect in the bank's title to said bonds. Such being the case, the county is a holder in due course, and is entitled against the real owner to a lien on the bonds to the extent of the county's deposits. This entitles the county to possession of the bonds.