**MAYS v. WILKINSON et al.**

**No. 988.**

District Court, N. D. Oklahoma.

Oct. 18, 1935.

Loan bonds with the said bank for safe-keeping, taking the receipt of said bank therefor in writing. Thereafter, on the 5th of November, 1924, the plaintiff deposited fifteen Fourth Liberty Loan bonds with said bank for safe-keeping and took the receipt of said bank therefor. On the 9th of July, 1926, the plaintiff deposited nine Fourth Liberty Loan bonds with said bank for safe-keeping and took the bank's receipt therefor. All of said bonds were of the denomination of $1,000 and amounted, as above indicated, to $39,000. The interest on all of said bonds was evidenced by coupons attached, and at interest paying periods until the 25th of March, 1927, the coupons were clipped by said Joseph Mays and O. D. Groom, as vice president and cashier of said bank.

On the 25th of March, 1927, however, the bank, without the knowledge or consent of the plaintiff, appropriated the $39,000 of bonds and deposited them with other bonds with the county treasurer of Creek county, Okl., as a pledge to secure the deposit of county moneys in said bank, and took the receipt of Ralph H. Blake, then county treasurer of Creek county, Okl., for said bonds so deposited in the sum of $54,500. It is admitted that the county treasurer accepted said bonds in the belief that they were the property of the bank, and the county treasurer had no knowledge of any facts which would have led a reasonable person to inquire as to the actual ownership of said bonds.

The plaintiff received the interest on the bonds as it matured and, after the bonds were deposited with the county treasurer, O. D. Groom told the plaintiff that said bonds were deposited with the county treasurer of Creek county, and paid the plaintiff the interest due thereon, but did not indicate to the plaintiff that said bonds had been hypothecated or pledged to the county treasurer of Creek county, until the afternoon of the day the bank suspended operations.

On April 24, 1928, the bank was declared insolvent, and the Comptroller of Currency of the United States, pursuant to law, appointed J. G. Hughes as receiver of said bank.

On the 4th of September, 1928, the plaintiff commenced and prosecuted an action in replevin in the state district court for the recovery of the thirty-nine Fourth Liberty Loan bonds in question. Said cause was heard in the district court of

L. O. Lytle and John R. Miller, both of Sapulpa, Okl., and W. V. Pryor, for complainant.

George B. Schwabe and Frank Settle, both of Tulsa, Okl., and Sebe Christian, Co. Atty., of Sapulpa, Okl., for respondents.

VAUGHT, District Judge.

The plaintiff brings this action against the receiver of the First National Bank of Bristow, Okl., seeking recovery of the value of certain securities deposited for safe-keeping in said bank prior to receivership.

The facts, briefly, as stipulated, are that on the 25th day of October, 1924, while said bank was a national banking association with W. W. Groom as president and O. D. Groom as vice president and cashier, the plaintiff deposited fifteen Fourth Liberty

Creek county, Okl., and, judgment having been rendered for defendants, plaintiff appealed to the Supreme Court of the state of Oklahoma. A decision was rendered by said court in favor of the board of county commissioners of Creek county and Ralph Blake, county treasurer of Creek county, on the 16th of May, 1933 (Mays v. Board of County Com'rs, 164 Okl. 231, 23 P.(2d) 664). The substance of the opinion of the Supreme Court was that the county treasurer had acted in good faith and that he had a right, under the laws of Oklahoma, to make a deposit in the First National Bank of Bristow, and to accept and hold, as security therefor, the Liberty bonds in question.

On the 10th of November, 1928, the plaintiff filed a claim for said bonds with the receiver, and on the 18th of December the receiver wrote a letter to the attorneys for plaintiff advising them that he was in receipt of a letter from the Comptroller of Currency of the United States, under date of December 7, 1928, and further stated that he, the receiver, could not allow the claim of the plaintiff as a preferred claim, nor as a common claim, but would hold same awaiting the outcome of the suit which plaintiff had instituted in the district court of Creek county at Sapulpa against the county treasurer, in which he was seeking to replevin the bonds, and that while said suit was pending the receiver would submit the matter to the Comptroller's office for instructions.

The plaintiff prosecuted his case through the state court and after the Supreme Court had denied a petition for rehearing on July 12, 1933, the plaintiff again on August 31, 1933, filed his claim with the receiver. There is no evidence that the receiver had made any ruling on the claim originally filed, except to advise the plaintiff that, pending the decision of the state court in the replevin action, he would hold the matter for further consideration.

On the 28th day of August, 1933, the county treasurer of Creek county sold the thirty-nine Fourth Liberty Loan bonds above mentioned, together with eleven $1,-000 denomination Fourth Liberty Loan bonds belonging to the First National Bank of Bristow which had been pledged with said thirty-nine bonds above mentioned, for the satisfaction of the county deposit for which said bonds had been theretofore, on the 27th day of March, 1927, pledged with the county treasurer of Creek county, as provided by the laws of the state of Oklahoma for the sale of pledged securities. After the sale of said bonds, there was returned to J. G. Hughes, the receiver, $702.-39 in cash and nine Liberty bonds of $500 each, or a total of $5,202.39, which the receiver placed to his credit, as receiver.

The stipulation of facts further discloses that the said bonds were appropriated by the bank as hereinbefore set out without the knowledge or consent of the plaintiff, Joseph Mays, and that the said plaintiff has not received any portion of the proceeds from the sale of said bonds.

The stipulation further provides that immediately upon the suspension of the said banking association, D. V. Penn, the examiner in charge, was appointed by the Comptroller of Currency of the United States as temporary receiver of said banking association; that the said Penn gave notice to creditors; that the attorney for Joseph Mays conferred with the said Penn relative to the filing of the claim against said association in receivership, and, later, upon the appointment of J. G. Hughes as receiver, the attorney for Mays conferred with the said Hughes. In the report of Penn, receiver, on April 25, 1928, is found the following:

### "Safe-keeping Bonds

"United States Liberty Loan Bonds property of Joseph Mays left for safe-keeping were subsequently placed in the assets of the bank and proceeds used by Groom, bonds now pledged to secure county deposits. Mays holds bank's receipt for the bonds which have been identified from numbers of bonds from his receipt and from bank's receipt from County Treasurer. $39,000.00."

During all of the time from the 24th of October, 1924, to the 24th of April, 1928, Oscar D. Groom, or O. D. Groom, was an acting official of the First National Bank of Bristow and was one of the officials actively engaged in the conduct and operation of said bank, and during said period the said O. D. Groom was the personal, banking, and financial adviser of said Joseph Mays and enjoyed the confidence of said Mays. Joseph Mays, the plaintiff, was an old man, more than 80 years of age, and practically blind.

During the operation of the receivership, the receiver collected from all sources the sum of $442,936.02 and disbursed the sum of $425,401.16.

The action, filed on April 14, 1934, is brought against Sam F. Wilkinson, as successor of J. G. Hughes, receiver for the bank, and also against the county treasurer and board of county commissioners of Creek county, Okl., by amendment to the bill.

The defendants, the county treasurer and board of county commissioners, by proper answer, have specifically denied any liability to the plaintiff, alleging that the county treasurer accepted the said bonds in good faith, as was his custom in dealing with national banks, and pleaded that the plaintiff filed an action for replevin in the state court against the board of county commissioners of Creek county and the county treasurer; that the Supreme Court of Oklahoma, in the case of Joseph Mays v. Board of County Commissioners et al., rendered an opinion on the 16th of May, 1933, 164 Okl. 231, 23 P.(2d) 664, holding the plaintiff was not entitled to recover; that the county treasurer was lawfully in possession of said bonds; that he received same as a pledge to guarantee a deposit made in the bank, and that, therefore, this question is res judicata as to all parties.

The defendant receiver has pleaded that the plaintiff has waived his rights by failing to file a claim within the time provided by law. He further pleads that the bonds were taken from said bank by the said O. D. Groom without the knowledge or consent of the other officers of the bank; that they were sold by Groom to the bank, therefore, the bank was legally in possession of said bonds; and that if the plaintiff has any remedy it is against Groom. He furthermore asserts, by way of cross-bill, that, if the plaintiff should recover a judgment against the receiver, the receiver is entitled to judgment for a like amount over against the county treasurer and the county commissioners.

There is very little difference in the contentions of the parties as to the real facts. The plaintiff, Mays, an aged man approximately 83 years old and practically blind, came to the bank, invested his money in Liberty bonds and placed the bonds with the bank for safe-keeping. The bank was holding these securities in trust for the plaintiff and had no right to use said bonds for any purpose. It is apparent from the record in this case that O. D. Groom, who was the managing officer of the bank, actually took these bonds from the vaults of the bank and deposited them with the county treasurer in order to secure a deposit of some $52,000 of county funds, and all of this was for the benefit of the bank.

The rights of the various parties will be considered as they appear in the pleadings. These bonds were deposited with the county treasurer as a pledge to secure a deposit, on the 25th day of March, 1927. A material question is whether or not the bank had the right, under the National Banking Act (12 USCA § 21 et seq.), to secure a deposit of public funds by pledging the securities of the bank. This becomes material in determining whether or not the county treasurer had a right to accept the bonds from the bank as a pledge to secure the deposit of county funds which he made with the bank. Under this record it is not necessary to take time to argue that the bank had a right to use the funds of this plaintiff for this particular purpose. There is no question that the bonds belonged to Mays and that they were deposited with the bank for safe-keeping, not with a mere officer of the bank acting in a private capacity. Mays holds the receipts of the bank for the deposit of these securities with it for safe-keeping, and, so far as the bank is concerned, it will be treated as an embezzler of these bonds. This fact was not known to the county treasurer. He believed, and had a right to believe, that the bonds belonged to the bank and that he had a right to accept them as a pledge to secure the deposit of the money with the bank. But nothing in the record indicates anything but good faith on the part of Mays. He had implicit faith in an officer of the bank with whom he was dealing and knew nothing about the embezzlement of these bonds until after the bank had closed its doors, at which time he was advised that these bonds were placed with the county treasurer, but Groom did not indicate and explain to Mays that he had in fact abstracted the bonds and placed them with the county treasurer as property of the bank, but from the record it appears that Mays was of the opinion that they were there for safe-keeping, or some such purpose.

It is the contention of the receiver that O. D. Groom, while he was an officer of the bank, at the same time was personal representative of the plaintiff, Joseph Mays, and that he abstracted said bonds from the bank, sold them to the bank, and took, as

payment for said bonds, $39,000 from the funds of the bank. This defense does not appeal to this court. When Mays deposited the bonds, he deposited them with the bank, and not with some officer of the bank as an individual. A bank can only act through individual officers or employees, and an officer of the bank will not be heard to say that he acted in a private capacity, as the personal representative of this depositor, and not as an officer of this bank.

The receiver, furthermore, through all these years has advised plaintiff that the consideration of his claim would be withheld or postponed until the determination of the action which the plaintiff had brought in the state court against the county treasurer to replevin the bonds, and the replevin action by the plaintiff in the state court, for the recovery of the bonds, was evidently with the approval of the receiver, if not by his counsel and advice.

■ The plaintiff, therefore, at the time of the closing of the bank was entitled to the possession of the bonds which he had deposited with the bank for safe-keeping. A receiver having been appointed, it became his duty, if the bonds came into his possession, or if the receiver was in a position to recover the bonds, to return them to the plaintiff.

■ Did the bank have a right to deposit these bonds with the county treasurer? The bank closed its doors on April 24, 1928, and, if the pledging of these bonds with the county treasurer by the bank was an illegal act and beyond the power of the bank, then it was the duty of the receiver, by a proper action, to recover these bonds for the benefit of the bank, or of the plaintiff in this case, as the case may be. Whether or not the pledging of the bonds was illegal is no longer an open question. In Marion v. Sneeden, decided by the Supreme Court of the United States February 5, 1934, and reported in 291 U. S. 262, 54 S. Ct. 421, 422, 78 L. Ed. 787, that court said: "A national bank could not legally pledge assets to secure funds of a state, or of a political subdivision thereof, prior to the 1930 amendment; and since then it can do so legally only if it is located in a state in which state banks are so authorized. In some states national banks had, prior to the 1930 amendment, frequently pledged assets to secure public deposits of the state or of a political subdivision thereof; comptrollers of the currency knew that this was being done; and they assumed that the banks had the power so to do. But the assumption was erroneous. The contention that such power is generally necessary in the business of deposit banking has not been sustained."

This is the last word by our Supreme Court on this question. The "1930 amendment" referred to in this opinion is the amendment of June 25, 1930, c. 604, 46 Stat. 809, USCA title 12, § 90.

It is true that prior to this decision of the Supreme Court it had been the custom of the national banks to accept deposits and pledge the securities of the bank to secure the same, but under this decision of the Supreme Court, prior to June 25, 1930, such acts on the part of national banks, and on the part of the depositors of public funds, were illegal and unauthorized by the National Banking Act.

■ It is true that the Supreme Court of Oklahoma, in Mays v. Board of County Commissioners of Creek County, supra, held that a national bank has power to pledge its assets to secure deposits of public funds as incidental to banking business without specific statutory authority. But this decision was rendered May 16, 1933, and prior to the decision in Marion v. Sneeden, supra, by the Supreme Court of the United States. We are, therefore, compelled, under the law as declared in Marion v. Sneeden, supra, to conclude that a pledge of securities of a national bank to a state, or a political subdivision thereof, to secure a deposit of public funds in said bank, prior to June 25, 1930, was unauthorized by the national banking laws of the United States, and was, therefore, illegal.

It follows, therefore, that, at the time of the appointment of the receiver in the case at bar, the receiver knew that the particular bonds which were deposited by the plaintiff in this case were pledged by the bank to the county treasurer to secure a deposit of public funds, and it was his duty, as such receiver, to make a demand for said bonds or to institute an action in the proper court to recover same, and thereafter to disburse same as was proper under the law. Had he recovered the bonds, it would have been his duty, under the facts in this case, to deliver them to the plaintiff because the bank never had any title to said bonds. The receiver failed to institute this action, but permitted said bonds to be sold by the county treasurer, and made a settlement with the county treasurer on

the 12th of September, 1933, in which it is recited that the county treasurer received from J. G. Hughes, receiver of the First National Bank of Bristow, $62,757 in full settlement of this account and, after paying the county treasurer the amount of his deposit with interest, the county treasurer returned to the receiver nine $500 bonds and $702.39 in money, as a result of the settlement.

The defendant receiver does not seriously contend in his argument and brief that the plaintiff is not entitled to the $5,-202.39 returned to the receiver by the county treasurer. However, the court is of the opinion that the plaintiff is entitled to judgment against the receiver for the value of the thirty-nine bonds and that said judgment is a preferred claim against the assets of said bank.

For the reasons stated above and the authorities as declared in Marion v. Sneeden, supra, as well as the law as declared in Texas & Pacific Ry. Co. v. Pottorff, Receiver, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777, the receiver is entitled to judgment against the county treasurer and county commissioners of Creek county in the sum of $62,757.

The costs of this action should be taxed equally against the receiver and the defendants, the board of county commissioners and county treasurer of Creek county.

In rendering judgment in favor of the receiver against the county commissioners and county treasurer of Creek county, this court does so with great reluctance and only because of the declared law as announced by the Supreme Court in Marion v. Sneeden, supra. It seems rather strange, however, that the Comptroller of Currency, all these years, should have permitted the national banks to take advantage of a custom and practice of receiving public funds and pledging assets of national banks to secure the same and thus have the benefit of the public funds so deposited, without incurring any liability whatever against the pledged assets, and the court is following what he considers the cold letter of the law and not his sympathies, nor what he conceives to be just and equitable between the receiver and the county authorities of Creek county.

A form of decree together with findings of fact and conclusions of law, consistent with the foregoing opinion, may be submitted.