**MARYLAND CASUALTY CO. et al. v. BOARD of COM'RS of OKMULGEE COUNTY et al.**

No. 17248. Opinion Filed Dec. 14, 1926.

Rehearing Denied Nov. 22, 1927.

1. **Banks and Banking—Authority of State Bank to Pledge Assets to Secure Depositor.**

A state bank is forbidden by statute to pledge its assets to secure one of its depositors, unless the pledge comes within one of the exceptions made by special statute.

2. **Statutes—Conflict — Subsequent Special Statute Given Effect Over General Statute.**

A special statute enacted subsequent to a general statute, which deals with the subject-matter covered by the general statute, must be given effect over the general stat-

ute, where there is a conflict between the two statutory provisions. The rule of law applies even though the special statute does not contain a provision expressly repealing the conflicting provisions of the general statute.

### 3. Banks and Banking—Statutory Authority of State Banks to Pledge Assets to Secure County Deposits.

The express provisions of section 5727, C. O. S. 1921, which authorizes a county to receive certain enumerated assets of a state bank as a pledge to secure deposits of the county, impliedly grant authority to the bank to make the pledge.

### 4. Same—Pledge of Assets not for Performance of Conditions of Surety Bond Securing County's Deposits.

The effect of section 5727, supra, is to amend the general provisions of section 4144, C. O. S. 1921, to the extent of authorizing a state bank to pledge certain enumerated assets to the county to secure a deposit, in the place of a surety bond, but the bank is not authorized to pledge its assets collateral to and for the performance of the conditions of the surety bond executed and delivered to the county to secure its deposits.

### 5. Contracts—Legal Duty of Debtor to Pay Creditor Unless Informed of Paramount Claim of Third Party.

It is the legal duty of the debtor to pay his indebtedness owing to his creditor, unless some third party holds a lien, or right against the claim paramount to that of the creditor, of which the debtor is informed.

### 6. Municipal Corporations—Funding Bonds —Proceeds as Trust Fund to Pay Old Creditors.

Under the provisions of article 4, chapter 25, C. O. S. 1921, relating to the issuance of funding bonds, the municipal debtor of the old obligation continues to be obligor in the new form of indebtedness against the municipality. The requirement of the statute that the municipality sell the bonds for not less than par and pay the creditors from the proceeds imposes the status of a trustee on the officer who receives the purchase price for the bonds for the benefit of the creditors whose old indebtedness was merged into the funding bonds.

### 7. Judgment not Sustained.

Record examined; held to be insufficient to support judgment of the trial court.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Okmulgee County: John L. Norman, Judge.

Action by Board of County Commissioners of Okmulgee County for debt against the Maryland Casualty Company and the Globe Indemnity Company on surety bonds. The Bank Commissioner intervened in the cause, asserting claims to certain of the assets of the Bank of Commerce, then in course of liquidation. The County Treasurer of Okmulgee County intervened, Judgment for plaintiff in part for the amount sued for. Judgment for Bank Commissioner for possession of certain property involved in the action. The surety companies bring error; the Bank Commissioner cross-appeals. Reversed and remanded, with directions.

Ross & Thurman, for plaintiffs in error.

Fred Hansen and Ephraim H. Foster, for the Bank Commissioner.

A. N. Boatman, Co. Atty., for defendants in error Board of County Commissioners.

Opinion by STEPHENSON, C. The Bank of Commerce executed and delivered its bond to Okmulgee county on March 28, 1921, in the principal sum of $20,000 for which the Maryland Casualty Company became surety, to secure deposits made by the county in the bank. On July 9, 1921, the Bank of Commerce executed and delivered its bond to Okmulgee county in the principal sum of $25,000, for which the Globe Indemnity Company became surety, to secure deposits made by the county in the bank. The Bank of Commerce was adjudged to be insolvent, and the Bank Commissioner took charge of the bank on November 1, 1921, for the purpose of liquidation. Okmulgee county had $40,000 on deposit in the Bank of Commerce at the time the bank was taken over for liquidation by the Bank Commissioner. The board of county commissioners of Okmu'gee county commenced its action against the Bank of Commerce, as principal, the Maryland Casualty Company and the Globe Indemnity Company, as sureties, on August 1, 1923, to recover for the loss of the county's deposit in the sum of $40,000.

The surety companies, by their answer, pleaded the following defenses:

(1) That the bank pledged municipal bonds and municipal warrants with the county in excess of $50,000 to secure the deposits made by the county in the Bank of Commerce, and that the county released the pledges to the bank after the two bonds were executed and delivered to the county in excess of the amount of the bonds, without the knowledge and consent of the sureties, and that the wrong of the county in this respect operated to relieve the sureties of liability on the bonds.

(2) That the Bank of Commerce pledged Broken Arrow street improvement bonds of the value of about $2,500 with the county as security for the deposits in question, and that the bonds were then in the hands of the county treasurer for the purpose of the pledge. The surety companies prayed the court to require the county to foreclose its lien on the bonds; and that the proceeds from the sale be charged against the plaintiff's claim on the surety bonds.

The surety companies, by way of set-off, pleaded that the bank held two judgments against the county in the total sum of about $16,000, and that the two judgments were then owing, and a valid charge against the county. The surety companies prayed the court to cause the two judgments of the bank to be set off against any right of recovery in favor of the plaintiff on the two bonds.

The Bank Commissioner intervened in the action and set forth that the Broken Arrow street improvement bonds were the property of the failed bank, and that the bonds were not impressed with the status of pledged property. The Bank Commissioner further set forth that he was entitled to the possession of the street improvement bonds as assets of the insolvent bank, and that the bonds should be treated as assets of the failed bank. The interplea of the Bank Commissioner further set forth that the two judgments were funded by the county, along with other indebtedness of the county, prior to the commencement of this action; that the funding bonds had been sold as provided by law, and that a sum of money from the proceeds of the sale, equal to the amount of the judgments and accrued interest, was in the hands of the county treasurer of Okmulgee county; that said sum of money was received by the county treasurer for the judgment creditor, and was then held by the county treasurer as trustee for the Bank Commissioner. The Bank Commissioner prayed the court to deny the two judgments as set-offs and direct the county treasurer to pay to the Bank Commissioner the sum of money held by the county treasurer in trust for the bank.

The county treasurer of Okmulgee county intervened in the cause and is a party to this appeal. The court sustained a general demurrer to plaintiff's action against the Bank of Commerce on the ground that the court was without jurisdiction to entertain a suit against the bank on the bonds, as the bank was then under the jurisdiction of the Bank Commissioner, in the course of liquidation.

The trial of the cause resulted in the following judgment:

(1) That the surety companies be allowed a set-off for the two judgments which were included in the funding bonds.

(2) That the plaintiff have judgment on the two surety bonds for the amount of the deposits in the failed bank, over and above the amount of the two judgments.

(3) That the Bank Commissioner have judgment for the possession of the Broken Arrow street improvement bonds.

The surety companies have perfected their appeal and submit the first two propositions set forth in their answer, for the reversal of the judgment. The Bank Commissioner perfected his cross-appeal, and complains of the action of the court in allowing the two judgments of the bank as a set-off against plaintiff's right of recovery. It is the further contention of the Bank Commissioner that a state bank is not authorized to pledge its assets to indemnify a depositor against loss.

The Legislature of 1907-8 enacted a provision relating to state banks pledging their assets as collateral security for deposits, which is carried as section 4144, C. O. S. 1921. The section reads in the following language;

"No bank, banker or bank official shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security; provided that any bank may borrow money for temporary purposes, not to exceed in amount fifty per cent. of its paid-up capital, and may pledge assets of the bank as collateral security therefor; provided, further, that whenever it shall appear that a bank is borrowing habitually for the purpose of reloaning, the Bank Commissioner may require such bank to pay off such borrowed money. Nothing herein shall prevent any bank from rediscounting in good faith and indorsing any of its negotiable notes."

The general statutory provision as quoted above forbids a state bank to pledge its assets as collateral security in favor of any depositor. The pledge of a bank of its assets as collateral security for the deposit of a county would be unlawful if the general provision stood alone. The Legislature of 1919 enacted provisions in relation to county depositories. Such statutory provisions are now carried in section 5727, C. O. S. 1921, and are in substance:

(1) The board of county commissioners shall designate one or more banks located in the county, as county depositories, and the county treasurer shall deposit daily all the funds and money of whatsoever kind shall come into his possession by virtue of his office in the designated depositories.

(2) That the board of county commissioners shall take from each bank designated as a county depository, a surety bond of some surety company authorized to do business in the state of Oklahoma, in a sum equal to the **largest approximate amount that may be** deposited in the designated bank, **at one time.**

The exact reading of the statute in relation to taking a surety bond or a pledge of assets of the bank is in the following language:

"Provided that in lieu of said surety bond, or in addition thereto, security may be taken consisting of United States bonds, state bonds or warrants, county bonds or warrants, or such other bonds or warrants issued by any municipality under authority of and in compliance with the statutes of Oklahoma; provided, that all said warrants shall have been issued pursuant to a legal appropriation."

The meaning of the phrase, "provided that in lieu of said surety bond, or, in addition thereto," is important for the disposition of the question presented in this appeal.

The phrase is in the nature of a proviso, or exception to the requirement of the board of county commissioners to take a surety bond in a sum equal to the largest approximate amount that may be deposited in the bank at one time. Under the proviso, or exception, the board of county commissioners may receive from the bank certain designated classes of its assets, to secure the county's deposit, in place of the surety bond required by the general provision. If the board of county commissioners receives the designated assets of the bank as security for deposits, in lieu of a surety bond, it must require the pledging of such designated assets of the value equal to the largest approximate amount that may be deposited in the bank at any one time.

The phrase, "or in addition thereto" (which relates to the surety bond), means that the board of county commissioners may receive a surety bond from the bank to secure deposits, conditioned for the payment of a sum of money less than the largest approximate amount which may be deposited in the bank at any one time. But in this event the bank would be required to pledge of its designated assets an amount, plus the surety bond, which would equal the largest approximate amount that the county would deposit in the bank at any one time. The phrase, "or in addition thereto," does not authorize the bank to pledge its assets collateral to, and as security for, the performance of the conditions of the bond.

Section 5727, [supra, has for its background the general provision embodied in section 4144, which forbids a state bank to give one creditor preference over another, through the pledge of its assets. A creditor or depositor who asserts a preference must rest his right on some exception to the general rule. A county cannot assert the preference right except, that it results from receiving the enumerated assets as defined by section 5727, supra. The designated assets of a state bank received as a pledge for deposits must be pledged on the conditions named in the section, in order to give the county the benefit of the exception. The enumerated conditions of section 5727, supra, on which the county may receive the assets of a state bank as a pledge to secure county deposits, are:

(1) The designated assets in lieu of a surety bond, and;

(2) The designated assets of the bank, to that amount plus the surety bonds, which will equal the largest approximate amount that may be deposited in the bank at any one time.

The section shows clearly that it was not the intention of the Legislature to authorize state banks to pledge their assets collateral to, and for the performance of the conditions of a surety bond, to secure the deposit of a county made in a designated county depository.

The county is authorized to receive warrants of the county as a pledge to secure deposits of the county made in a state bank. The fiscal year commences on the first day of July. The county may issue its warrants against the estimated needs for the current year commencing on the first day of July of the current fiscal year. The first one-half of the taxes for the current year is not collected until January 1st. As the first half of the taxes is not available for the payment of warrants until six months of the fiscal year have elapsed, this results in a necessity for the payee of the warrants, or some one for him, to carry the warrants until funds are available through the collection of the first one-half of the taxes. Ordinarily the banks of the county pay par value to the holders, and carry the warrants

until the first one-half of the taxes is available. This results in a considerable sum of money being expended by the bank in the purchase of the warrants before the county is able to cash the same. It is clear that a pledge of the warrants by the bank to the county to protect the county on deposits of the first one-half of the taxes, or the second, in course of collection and payment, is perfect security to the county for any loss. One of the purposes of section 5727, supra, was to enable the bank to make a beneficial use of the warrants of the county which became a part of its assets, while being held for payment by the county. The construction which the surety company contends ought to be placed upon the section would defeat the purpose, and at the same time result in a preference to the county as a depositor to the prejudice of other depositors. The county could not be damaged through loss of its deposits, where it received an equal amount of pledged county warrants. It would be useless, and a superfluous act to require the banks to give, and the county to receive a surety bond collateral to the pledge of county warrants, and for the performance of the conditions for which the warrants were pledged. No liability could ever arise on a surety bond executed, and delivered collateral to, and as security for, the performance of the conditions on which county warrants were pledged as security for county deposits, as the pledged warrants would be equal to pledged dollars, so far as the county was concerned.

The position of the surety companies in this particular respect is very much like that taken by the surety company in the case of Columbia Bank & Trust Co. v. U. S. F. & Gty. Co., 33 Okla. 535, 126 Pac. 556. A surety company, under the provisions of sections 4144, and 5727, can never obtain a preference right in assets of a state bank, pledged to secure county deposits, as the bank is not authorized to pledge the designated assets collateral to and for the performance of the conditions for which a surety bond is given. As the bank is only authorized to pledge its designated assets on the two conditions named, i. e., in lieu of a surety bond, or supplementary to a surety bond, the effect is to hold the surety companies liable to the extent of the deposit, or to the extent of their bonds. If the surety bonds are not sufficient to cover the deposits, then the county may look to any pledged assets of the bank as a supplementary security for sums over and above those covered by the surety bonds. In this case

the surety bonds are sufficient to cover the deposit lost by the county, and they must be held to answer first for the loss.

The express authority of section 5727, supra, for the county to receive certain designated assets of a state bank, in lieu of a surety bond to secure deposits of the county, is an implied grant of power on the part of the bank to pledge the described assets for the purposes provided by the section. The general prohibition provided by section 4144, supra, would prohibit the pledging of the bank's assets to secure a county's deposit, except the assets enumerated in section 5727, supra, upon the two conditions named in the latter section. Section 5727 is a specific legislative act regulating county deposits, and prescribes the conditions upon which deposits are to be made in county depositories. The provision of section 5727, supra, operates to repeal the general provisions embodied in section 4144, to the extent of excluding a county from the effect of the latter section. A rule of statutory construction is, that later special legislation must be given precedence over former general statutory provisions in conflict with the special legislation. This rule applies even though the special legislative act contains no repealing clause. The two statutory provisions must be considered together, and given effect accordingly. Kuchler v. Weaver, 23 Okla. 420, 100 Pac. 915; Union Savings Assoc. v. Burns, 74 Okla. 1, 176 Pac. 227; Priddy v. Thompson, 204 Fed. 955, 123 C. C. A. 277; Citizens State Bank v. Getting, 77 Okla. 48, 187 Pac. 217.

Article 4 of chapter 25, C. O. S. 1921, provides the procedure for counties and other municipalities to pursue in finding the outstanding indebtedness named by the article. Outstanding judgments are an indebtedness authorized to be funded by municipalities.

Okmulgee county was the judgment debtor, and became the obligor in the funding bonds, which funded the two judgments. The Bank of Commerce was the judgment creditor, and was entitled to that part of the purchase price for the sale of the funding bonds, equal to the face of the judgment and accrued interest. The county, which was the obligor, both in the judgment, and of the funding bonds, received that part of the purchase price for the sale of the funding bonds, equal to the principal of the two judgments and accrued interest, for the use and benefit of the bank. The provision of

section 4268, article 4, C. O. S. 1921, which requires the county to sell the funding bonds, results in impressing the officers of the county, who receive the purchase price of the bonds, with the status of a trustee for the use and benefit of the creditors whose claims have been funded. Two of the purposes of section 4268, supra, in requiring the debtor to sell the funding bonds, are: (a) To give the county the benefit of premiums which such class of bonds command on the market at the time of the sale; (b) to compel the bonds which are required to be issued for a sum equal to the indebtedness funded, to operate to satisfy the claims of the creditors against the municipality for the indebtedness funded. The requirement of the section, that the bonds be sold for a sum of money not less than par and accrued interest, accomplishes the latter purpose. The creditor is not entitled to a premium which a bond may bring on the market, where the face of the bond equals the amount of the funded indebtedness. The funding bonds, which funded the two judgments, were sold by the county, and the treasurer received the purchase price on February 27, 1922, and prior to the commencement of this suit. The treasurer received that part of the purchase price for the bonds equal to the indebtedness owing on the two judgments, in trust, for the use and benefit of the Bank of Commerce. The treasurer received the money and has continued to hold the same as a trustee for the bank. As the bank was insolvent and in the hands of the Bank Commissioner as a trustee for the purpose of liquidation, the latter was entitled to receive the money from the hands of the county treasurer, as it was then the property of the failed bank. That a debtor owes the legal duty to pay the indebtedness due to his creditor, unless some third person holds a lien or right against the claim, paramount to that of the latter, is so elementary a principal of law, that to be assented to, it needs only to be stated.

Section 4278. C. O. S. 1921, requires the proceeds from the sale of funding bonds to be applied to the payment of creditors whose claims were merged into the bonds. For a failure to do so, they are liable both to civil and criminal actions. The section reads in the following language:

"Any person who shall appropriate or use, or aid or abet in appropriating or using, any of the funds or moneys mentioned in this article, for any other purpose than as in this article provided, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in a sum equal to the amount of money so appropriated or used, and imprisoned in the county jail for not less than three nor more than twelve months, and shall also be liable in a civil action for the amount so misappropriated or used, to be prosecuted by any such bond holder or other party entitled thereto."

If the bank had remained in this action, it could not have pleaded the two judgments as a set-off for the reason that the county treasurer had received the purchase price for the funding bonds, into which the judgments had been merged. The county treasurer was prohibited by statute to pay the money to anyone, other than the bank, or the Bank Commissioner, as the representative of the failed bank. It follows that the sureties cannot plead the two judgments as set-offs, unless the proceedings which operated to merge the judgments into the bonds, were void as to them. If the sureties should assert the claim that the funding bond proceeding did not deprive them of the right to plead the set-off, it would be tantamount to the assertion that they held a lien, or claim against this part of the assets of the bank, superior to the right of any general creditor of the failed bank. The two judgments were owing to the bank at the time it failed, and were assets of the failed bank for the benefit of its general creditors, unless the sureties were seized of a superior lien or claim therein. While the bank attempted to pledge the two judgments to secure deposits of the county, the sureties do not found their claim on the attempted pledge. If they did base their right on the claim that they had been pledged, the answer would be: (a) That the special statute does not authorize the pledging of such assets of a state bank to secure the deposits of a county; (b) that a state bank cannot pledge its assets collateral to and for the performance of the conditions of a surety bond executed and delivered by a state bank to a county, to secure deposits of the county. It was said by this court in the case of Beams v. Young, 92 Okla. 294, 222 Pac. 952, that:

"It has been settled by a long line of decisions that a claim, to be a proper matter of set-off, must be a subsisting debt owing at the time of the commencement of the action and upon which an action might be sustained."

It is true that the county treasurer owes the duty to pay the proceeds from the bond sale to the bank, or its representative, but the existence of this fact does not create

the right for the sureties to maintain the set-off on some other form or evidence of indebtedness. If a judgment be the foundation of the set-off, it must be due and owing, and is the evidence of the set-off. The two judgments fail as a set-off because they were merged into the funding bonds prior to the commencement of the suit. The funding bonds became a new and different evidence of indebtedness, but not for a new indebtedness. The funding bonds represent the old indebtedness of the judgments, in a new form and payable at times different from those fixed by law for judgments. The present evidence of the old indebtedness represented by the judgments is not even now due and owing by the county. To permit the sureties to maintain a set-off on the old evidence of indebtedness would still leave the county liable for the debt on the new evidence of indebtedness, represented by the funding bonds now in the hands of purchasers for value. The sureties go no farther in this appeal on this question than to assert their right to use the two judgments as a legal set-off against the county's action. The judgments must fail as a legal set-off for the reasons: (a) The debt which the judgments once represented is now evidenced and represented by funding bonds held by third parties; (b) the judgments were merged into the new form of indebtedness represented by the funding bonds held by third parties; (c) the new form does not show that the indebtedness is now owing by the county; (d) the evidence does not disclose that by the new form the indebtedness is now owing to the bank.

It is true that the county treasurer is holding a part of the purchase money from the funding bonds equal to the indebtedness represented by the judgments, but the sureties make no claim to this money. The trial court made no order for the disposition of the money, although the statute made it the imperative duty of the county treasurer to pay the money to the creditor. As the Bank Commissioner represents the bank, the statute requires the payment to be made to him. The sureties do not claim that their status as sureties gives them a preference over other creditors. The claim would not have been tenable, if they had made it. Columbia Bank & Trust Co. v. U. S. F. & Gty. Co., 33 Okla. 535, 126 Pac. 556.

The judgment is reversed and remanded, with the directions that the court enter judgment for the plaintiff against the sureties on the two bonds for the amount of the county's deposit in the Bank of Commerce at the time the institution was taken over by the Bank Commissioner for liquidation; second, that the court direct the county treasurer, who is a party to this appeal, to pay into the hands of the Bank Commissioner the money which he received for the sale of the funding bonds, equal to the indebtedness of the two judgments which were included in the funding bonds; third, that the court direct the county treasurer to deliver the Broken Arrow street improvement bonds into the custody of the Bank Commissioner.

By the Court: It is so ordered.