### RIDER, County Treas., et al. v. STATE ex rel. SHULL, Bank Com'r.

No. 22936.  Jan. 8, 1935.

Rehearing Denied Feb. 26, 1935.

Perry Porter, Co. Atty., William M. Thomas, Tomerlin & Chandler, and Troy Shelton, for plaintiffs in error.

Commons & Chandler and M. B. Cope, for defendant in error.

SWINDALL, J. On January 2, 1930, plaintiff, state of Oklahoma ex rel. C. G. Shull, State Bank Commissioner, assumed control of the Bank of Picher, Picher, Okla., a state bank, on account of its insolvency for the purpose of winding up its affairs. August 14, 1930, plaintiff filed this action against Horace M. Rider, as county treasurer of Ottawa county, Okla., to recover possession of certain itemized promissory notes, aggregating $36,800.41 in face value, allegedly belonging to the Bank of Picher and unlawfully held by said county treasurer. The board of county commissioners of Ottawa county intervened in the action and was made a party defendant. Defendants thereafter filed their second amended answer and cross-petition. In the answer defendants pleaded three defenses: (1) A general denial; (2) that the county treasurer held the described promissory notes "as collateral security for the deposit of public money in the Bank of Picher belonging to Ottawa county, Okla., in the sum of $35,000"; and (3) that, if the deposit for which the notes were given was illegal, the plaintiff cannot recover except upon return of said deposit. In their cross-petition defendants pleaded the following alternative causes of action: (1) They asserted the facts of the deposit and pledge as heretofore shown, and alleged that the "deposit of said sum of $35,000 hereinbefore referred to, augmented the assets of said bank, which came into the hands of the Bank Commissioner, to the extent of $35,000," then prayed that they be allowed a preferred claim in the assets of the insolvent bank in the amount stated. (2) They alleged a deposit standing on the date of insolvency of the bank at $79,475 and interest at 3 per cent. accrued to date of closing, $171, and asked that it be allowed in full, subjecting it to pro rata distribution until the dividends plus the amount realized from the security equal said claim.

The plaintiff filed a demurrer to the second amended answer and to the second amended cross-petition. The court sustained plaintiff's demurrer to defendants' second amended answer and sustained the demurrer to defendants' second amended cross-petition as to all parts thereof, except that part seeking the allowance of a claim against the plaintiff for the sum of $79,475, and interest, and overruled said demurrer as to that part. The parties elected to stand on the pleadings, and the court rendered judgment for plaintiff for possession of the itemized notes, aggregate face value of $36,800.41, and for defendant decreeing it holder of a valid claim for $79,475 against plaintiff as receiver, together with accrued interest of $171, at time of closing, and 3 per cent. thereafter. Defendants have appealed to this court.

Plaintiffs in error herein rely upon the following propositions as showing error of

the trial court: (1) That defendants' general denial, the action being in replevin, entitled them to show any defense in evidence to defeat plaintiff's cause, and was, therefore, good against a demurrer; (2) that the pledge was valid under the laws of the state of Oklahoma, at least so that the bank, or its receiver, cannot invalidate it; (3) that the bank, or its receiver, cannot recover possession of the notes without restoring the $35,000 deposited; (4) that the $35,000 deposited is affected with a trust, augmented the assets which passed to the receiver, and so should be restored first out of the bank's assets, as a preferred claim, and the county is entitled to hold the collateral until such preferred claim is paid in full; (5) that in any event defendants are entitled to a general claim for the full amount of deposit of $79,475, with interest, and to hold the notes until paid. A consideration of these propositions will determine the correctness or incorrectness of the judgment of the trial court.

Under their first proposition plaintiffs in error rely upon the rule announced by our court that in replevin, under a general denial, one may prove any defense to defeat plaintiff's cause of action, and cite Craighead et al. v. Myers, 146 Okla. 25, 293 P. 192. Where a general denial is presented, together with special defenses, it is requisite for recovery that plaintiff establish all essential elements of his cause which are denied and overcome all special defenses, and if the special defenses are inadequate, the denied material allegations must still be proved. First State Bank of Mannsville v. Howell, 41 Okla. 216, 137 P. 657; Williams v. Gibson Bros., 60 Okla. 147, 159 P. 649. However, in the present case, defendants in pleading admitted plaintiff's ownership, their own receipt from plaintiff of the notes, and their present possession, and alleged the facts upon which they base their right to retain possession, to wit, that the notes are held as collateral security for the deposit of public money. It is fundamental that admissions of fact in pleadings are judicially established. Lee v. Little, 81 Okla. 168, 197 P. 449. It is also a necessary adjunct to orderly trial, and to the preservation of the parties' rights, that no material variance shall be permitted from the issues drawn by the pleadings. El Reno Wholesale. Gro. Co. v. Keen, 93 Okla. 198, 220 P. 653; Chambers v. Van Wagner, 32 Okla. 774, 123 P. 1117. The defendants have drawn issue upon only one of the elements of plaintiff's cause, the right to immediate possession, and voluntarily presented the facts upon which

they rely, so we are of the opinion that they cannot depart from the issues of fact solemnly presented by their pleadings, although they may not have been required by law to specifically assert, as they did, the grounds of their defense. Under such circumstances, if, as a matter of law, the defense is inadequate, a judgment on the pleadings is proper. Schuber v. McDuffee, 67 Okla. 160, 169 P. 642.

In their second proposition plaintiffs in error urge that the law governing the admitted facts entitles them to retain possession of the notes in controversy, and further to carry out the terms of the pledge. Section 4144, C. O. S. 1921, as amended by section 2, c. 137, S. L. 1923, and section 1, c. 99, p. 147, S. L. 1925 (sec. 9115, O. S. 1931), prohibits, as interpreted by Maryland Casualty Co. v. Okmulgee County, 128 Okla. 58, 260 P. 1112, the pledge by a bank of its assets to secure any depositors, including counties, except as therein and elsewhere expressly permitted.

That section in part provides as follows:

"* * * Provided, any bank, by the unanimous consent of its board of directors, expressed by resolution duly entered in the minute book of such bank, may pledge the assets of such bank as security for township, city, town, school district, benevolent or fraternal association funds deposited in such bank in all cases where no surety bond is given to secure such deposits. * * *"

Section 5727, C. O. S. 1921, as amended by section 1, c. 88, p. 138, S. L. 1925, and section 1, c. 327, S. L. 1929 (sec. 7428, O S. 1931), provides in part as follows:

"* * * Before directing or authorizing the deposit of any such funds aforesaid, the board of county commissioners shall take from each such bank a surety bond of some surety company, authorized by the proper authorities of the state of Oklahoma to do business in said state, in a sum equal to the largest approximate amount that may be deposited in each, respectively, at any one time; said surety bond to be uniform and prescribed by the Attorney General of the state. Provided, that in lieu of said surety bond or in addition thereto, security may be taken consisting of United States bonds, state bonds or warrants, county bonds or warrants, or other bonds or warrants, issued by any municipality under authority of and in compliance with the statutes of Oklahoma, provided, that all said warrants shall have been issued pursuant to a legal appropriation. * * *"

Under these statutes, plaintiffs in error admit, the security which the board of county commissioners may legally take for

632

county deposits is limited to those ordinarily safe securities specified. The plaintiffs in error argue, however, that section 4144, as amended, supra (sec. 9115, O. S. 1931), discloses a basic intention on the part of the Legislature authorizing banks to pledge "the assets" to secure public moneys, and that reading section 5727, as amended (sec. 7428, O. S. 1931), supra, in its light, it is evident that the limitations there found on the kinds of assets to a class having stable market cash value authorized as acceptable for county deposits were made for the protection of the county funds and not the bank or its depositors; that, therefore, only the county, if it, can take advantage of the illegality of the transaction. The argument is plausible, but we cannot say, with plaintiffs in error, that the only reason for the limitation is protection of county funds and not the depositors. The fundamental policy is equality of depositors in event of insolvency, and the preservation of the bank's assets in its hands for that purpose. It may be that the Legislature thought if a bank is permitted to pledge its notes, their value being speculative and differing with each note, pledges would require a margin of safety beyond the actual collectible value of the notes, then, in carrying out the pledge, sell them for less than their collectible value, thus reducing the assets which would otherwise have been available for the payment of depositors; or there may be other reasons of practical banking why such pledge is unwise. It is to be noted that the Legislature, in 1931, S. L., c. 40, sec. 1, amended section 4144, as amended, supra, in part excepting from the authority therein granted to pledge "the assets" the right to pledge "promissory notes" for the security of the funds enumerated. We, for these reasons and because of these statutes, conclude that the bank was without authority to make the pledge, and the county the deposit on such pledge, and reject the contention that only the county can take advantage of the illegality of the transaction. Ewing v. Ellis County, 53 Okla. 250, 156 P. 229, cited, wherein this court held a bank and its sureties liable upon a bond given to protect county funds, although it was not a surety company's bond as required by statute, is not controlling because there no assets guarded by statute were in the hands of others and the bank's liability was identical on either bond.

The pledge agreement being illegal, and subject to attack by the Bank Commissioner on behalf of the depositors, is he entitled to recover the pledge collateral without restoring the money deposited? It was held so, in effect, by this court in the case of Maryland Casualty Co. v. Okmulgee County, 128 Okla. 58, 260 P. 1112. In that case a bank pledged authorized collateral as security for county deposits, later executed a surety bond, and certain of the securities were returned without the knowledge of the surety, others of them held until the bank closed. On suit by the county the surety claimed, among other things: (1) That the return of collateral without its knowledge released it; and (2) that the remaining collateral should be sold to reduce the county's claim against it. The court held the pledge of assets by a bank in addition to a sufficient surety bond illegal under the statute, it permitting such pledge only to supplement the bond, held the return of the collateral proper, ordered the remainder returned, and judgment given against the surety on its bond. If the county were entitled to retain the collateral or recover its deposit, the pledge being illegal, the surety, on theories of subrogation, held the same right (Stevens v. First Nat. Bank, 117 Okla. 148, 245 P. 567), and such was denied by the decision. No distinction can be taken because the county was secured by the bond, for payment leaves the surety in the position of the county without the bond. Nor, on the ground that restitution was not claimed, for it is equitable and must be offered precedent to the right to recover. Holcomb & Hoke Mfg. Co. v. Jones, 102 Okla. 175, 228 P. 968. The same result has been reached by our country's court of highest authority in a very recent decision. The Supreme Court of the United States, in City of Marion, Ill., v. Sneeden, 54 S. Ct. 421, decided February 5, 1934, opinion by Mr. Justice Brandeis, held:

"The petitioners contend also that even if the pledge was without authority in law, the bill was properly dismissed by the district court, because the bank could not have required return of the bonds without repaying the deposit and that it would be inequitable to permit the receiver to do so. We think these contentions are unsound. * * *

"Since the Herrin bank was without power to make the pledge of bonds here in question, its receiver is entitled to recover them unconditionally in order that they may be administered for the benefit of the general creditors of the bank."

Other cases so holding are: Divide County v. Baird (N.D.) 212 N. W. 236, 51 A. L. R. 296; Farmers & M. State Bank v. Con-

solidated School Dist., 174 Minn. 286, 65 A. L. R. 1407; Arkansas-Louisiana Highway Imp. Dist. v. Taylor, 177 Ark. 440, 6 S. W. (2d) 533. If we were to require restitution of the deposit, we would be effecting a preference to public funds by reason of violation of our statutes describing a manner for obtaining priority, and contrary to the general policy of our law and statutes. It is evidently our legislative policy that depositors in banks shall be protected against loss of assets in event of insolvency, and that public funds shall receive no special safeguards except such as are expressly provided, those so provided giving due regard to the interests of the depositors, thus dovetailing the policies involved. See Cherry v. Territory, 17 Okla. 213, 89 P. 190; Watts v. Cleveland County, 21 Okla. 231, 95 P. 771, 16 L. R. A. (N.S.) 918; Shull ex rel. v. Town of Avant, 159 Okla. 271, 15 P. (2d) 49. We, therefore, hold, that the State Bank Commissioner may recover the pledged collateral without making restitution of the money deposited.

In their fourth contention plaintiffs in error seek to impress a trust upon the $35,-000 deposited December 13, 1929, before the bank's closing on January 2, 1930. Under the decision of this court in Watts v. Cleveland County, supra, no title passes by an unauthorized deposit of public funds, and a trust relationship arises; but, in order to effect a preference thereby, it is necessary to trace the funds or assets into which they are converted into the hands of the Bank Commissioner. See, also, Shull ex rel. v. Town of Avant, supra. The cross-petition of defendants is indefinite and uncertain with regard to the identity of their funds, or proceeds thereof, which passed into the hands of the State Bank Commissioner, but, we think, sufficient against a demurrer to permit them to introduce proof tracing the funds. We so hold, and direct that the demurrer of plaintiff to this part of defendants' cross-petition be overruled.

Judgment was given allowing defendants a claim against the insolvent bank in the sum of $79,475, plus accrued interest of $171 to date of closing, and 3 per cent. thereafter, to be paid pro rata with other creditors, and no appeal is taken from this by the Bank Commissioner. Plaintiffs in error's claim is that they are entitled to hold the notes until paid this claim, a contention already sufficiently disposed of. The judgment on this claim is approved, but in the event defendants are able to trace their deposit and identify it or its proceeds

in accordance with the rules announced in the Cherry and Watts Cases, supra, and other cases in this jurisdiction relating to identifying trust funds, so as to effect a preference, it shall be modified accordingly.

For these reasons the judgment for plaintiff for possession of the itemized promissory notes is affirmed, and judgment on the demurrer of plaintiff to the cross-petition vacated, and the trial court directed to overrule said demurrer and proceed consistently with this opinion.

RILEY, C. J., and McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.