**AMERICAN EXCHANGE BANK, COLLINSVILLE, OKLAHOMA, Plaintiff,**

**v.**

**Dick CESSNA, Defendant.**

**No. 73–C–236.**

United States District Court, N. D. Oklahoma, Civil Division.

Oct. 3, 1974.

David L. Sobel, Tulsa, Okl., for plaintiff.

Morris & Morris, El Cajon, Cal., Michael L. Green, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This action arises from a check in the amount of $26,000.00 made by Defendant on March 15, 1973, payable to Bill Poulos. Said check was deposited by the Payee in Plaintiff bank. The check was drawn on the Wells Fargo Bank, El Cajon Branch, El Cajon, California. Payment on the check was stopped by Defendant and Plaintiff thereafter brought this action for the full amount of said check asserting it had advanced the full amount to its depositor, the Payee of the instrument in question. Plaintiff claimed to be a holder in due course. It seeks attorney fees in the action.

Defendant set out as his first defense, an assertion that he executed the instrument in question as an officer in a California corporation, Cessna Ranch. Defendant claimed that Plaintiff was not a holder in due course because its officers and employees had knowledge of the circumstances surrounding the issuance of the check and the subsequent stop payment order. The Defendant at the time of trial abandoned a contention raised in his Amended Answer that Plaintiff failed to seasonably post and forward the check through banking channels. He also defends on the basis that Plaintiff violated unspecified provisions in the Oklahoma Uniform Commercial Code and its own rules and regulations in allowing credit on the check prior to final settlement. Defendant alleged in his Amended Answer that he had satisfied the underlying obligation to the Payee, Bill Poulos, and that this would offset his obligation to Plaintiff.

The first aspect of the case to be determined is whether Defendant is personally liable on the check in question. The instrument discloses that it was signed by an individual. The Defendant admits that it is his signature and that only his personal signature appears in what is commonly known as the signature block of the check. (A notation on said check "Refer to Maker" was apparently placed thereon while same was in the banking channels.) The check does have the name "Cessna Ranch" along with an address and telephone number printed in the lower left hand corner. The Defendant has introduced a copy of the Articles of Incorporation certified by the California Secretary of State showing that the name of his corporation is "Cessna Ranch". Defendant asserts that this evidence shows that he signed in a representative capacity as President or General Manager of Cessna Ranch.

The provisions of the Uniform Commercial Code (UCC) are applicable relating to the obligations and rights of the parties as to the check in question. No conflicts of laws problem exists as the UCC is the law of Oklahoma, where this action is brought, and California, the place of Defendant's residence and where the payee bank is located. For convenience, the references to the UCC will be as codified under Oklahoma Statutes.

12A Oklahoma Statutes 1971 § 3-403 relates to signatures in a representative capacity. The statute provides:

"UCC § 3-403. Signature by Authorized Representative.

(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does

not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity."

Parol evidence as to such capacity is only proper in disputes between the immediate parties as per sub-section (2)(b).

Anderson, Uniform Commercial Code, 2d Ed. § 3–403:5 states:

"Where a transferee is the holder of an instrument, proof is not admissible as to any agreement between the payee and a signer as to the capacity in which the signer was acting."

█ This is the situation present in the case at bar and thus any knowledge by Poulos that Defendant operated his ranch as a corporation is not admissible in this action by the holder of the instrument in question.

The provision in the above statute relevant to corporate officers is found in subsection (3). This subsection which is self-explanatory is further explained in Anderson, Uniform Commercial Code, 2d Ed. § 3–403:6 as follows:

"The Code makes the exception of organization officers from personal liability more readily obtained than in the case of an ordinary agent. As to such officers, there is no personal liability if the instrument names the organization and the signature of the officer shows the title of his office."

█ In the instant case, the signature of Defendant does not show the title of his office and thus Defendant is personally obligated on the instrument in question.

█ The Plaintiff is a holder of the instrument. The rights of a holder are set out in 12A Oklahoma Statutes 1971 § 3–307 which provides:

"When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

In the case now before the Court, the Defendant's signature has been established by Plaintiff and it is now necessary to determine if the Defendant has established a defense. In Oklahoma Nat. Bank v. Equitable Credit Finance Co., 489 P.2d 1331 (Okl.1971) the Court stated:

" . . . . And the holder of an instrument is entitled to recover on it unless the defendant establishes a defense. 12A O.S.1961, § 3–307(2). To establish a defense, the defendant has the burden of proving the defense alleged in his answer by a preponderance of the evidence. Persson v. McCormick, Okl., 412 P.2d 619, 621 (1966)."

In the instant case, the only matter contained in Defendant's Amended Answer which resembles a defense, is an allegation that the indebtedness for which the check was written has been satisfied by payment to Bill Poulos and that this offset should defeat Plaintiff's action. This allegation can be considered as setting up the defense of failure of consideration.

The contention raised by Defendant that he has made a settlement with the Payee, Bill Poulos is not supported by the evidence. The Defendant testified that "the whole thing is a mess, it can't be determined who owes who." He also testified that an accounting between himself and Poulos has not been completed.

It appears to the Court that Defendant has failed to meet his burden of showing that the consideration for the instrument in question has failed. His contention that he may have paid Poulos too much money does not constitute proof that he has a defense to the instrument. It thus appears that Plaintiff would be entitled to recover as a holder

on the instrument herein even if it cannot be determined it is a holder in due course.

■ If Defendant herein had established that he had a good defense to the instrument, the burden would then shift to the Plaintiff to establish that it is a holder in due course. 12A Oklahoma Statutes 1971 § 3–307(3) provides:

"After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some other person under whom he claims is in all respects a holder in due course."

Although the Court finds that Defendant herein has failed to establish a defense to the instrument sued on by a preponderance of the evidence, it will make a determination of the Plaintiff's status as it claims to be a holder in due course. Such a determination is helpful in determining the amount due Plaintiff in this action. A holder in due course is generally defined in 12A Oklahoma Statutes 1971 § 3–302 which provides:

"(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

The rights of Plaintiff bank are further set out in 12A Oklahoma Statutes 1971 § 4–209 which provides:

"For purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of Section 3–302 on what constitutes a holder in due course."

The security interest referred to in the above section is defined in 12A Oklahoma Statutes 1971 § 4–208 which provides:

"UCC § 4–208. Security Interest of Collecting Bank In Items, Accompanying Documents and Proceeds.

(1) A bank has a security interest in an item and any accompanying documents or the proceeds of either

(a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied;

(b) in case of an item for which it has given credit available for withdrawal as of right, to the extent of the credit given whether or not the credit is drawn upon and whether or not there is a right of charge-back; or

(c) if it makes an advance on or against the item.

(2) When credit which has been given for several items received at one time or pursuant to a single agreement is withdrawn or applied in part the security interest remains upon all the items, any accompanying documents or the proceeds of either. For the purpose of this section, credits first given are first withdrawn.

(3) Receipt by a collecting bank of a final settlement for an item is a realization on its security interest in the item, accompanying documents and proceeds. To the extent and so long as the bank does not receive final settlement for the item or give up possession of the item or accompanying documents for purposes other than collection, the security interest continues and is subject to the provisions of Article 9 except that

(a) no security agreement is necessary to make the security interest enforceable (subsection (1)(b) of Section 9–203); and

(b) no filing is required to perfect the security interest; and

(c) the security interest has priority over conflicting perfected security interests in the item, accompanying documents or proceeds."

In the case at bar, credit was given by Plaintiff in its depositor's account in the amount of $24,219.00 and Plaintiff made an advance to its customer totalling $1,781.00. Ultimately, after Defendant's

check was dishonored by his stopping payment on same, Plaintiff was able to charge-back $13,679.39 remaining in the depositor's account with a resulting loss of $12,320.61. This sum represents the amount of value given by Plaintiff for which it can claim to be a holder in due course.

The evidence concerning whether Plaintiff bank acted in good faith when it took the instrument in question shows that in January, 1973, Plaintiff's Vice President, William S. Flanagan, Jr., had conferred with Defendant's banker, Robert Lenhard with the payee bank and had been advised that Defendant's credit rating was good. The evidence further discloses that previous checks from Defendant to Bill Poulos had been deposited in Plaintiff bank and had cleared with no problem. Any knowledge on the part of Plaintiff's officer relating to problems concerning drafts given by Poulos to sellers of horses drawn on Defendant would constitute mere suspicion which is not enough to show the Plaintiff acted in bad faith in accepting the check. Central Bank And Trust Co. v. First Northwest Bank, 332 F.Supp. 1166 (E.D.Mo.1971). 12A Oklahoma Statutes 1971 § 1–201(19) provides:

"'Good faith' means honest in fact in the conduct or transaction concerned."

The transaction involved herein is the deposit on March 21, 1973 by Poulos in Plaintiff's bank of the check in question. The Court concludes that Plaintiff acted in good faith in taking the instrument for deposit.

The last point to be determined in considering whether Plaintiff is a holder in due course is whether it had notice of any defense against the instrument by the Defendant. The defense ultimately setup in this action by Defendant was failure of consideration. This was based on broad assertion that Defendant "overpaid" Poulos in a joint venture in which they were engaged in purchasing a large volume of horses for export sale.

The Defendant asserts that Plaintiff's Vice President, William S. Flanagan, Jr., knew of the joint venture, and as a matter of fact had given both Defendant and Poulos legal advice on how to handle a portion of the export sale. The evidence is that Flanagan and Poulos made a trip to California and conferred with Defendant, and his banker, Lenhard on March 23, 1973. Defendant himself stated that the conferences with Poulos and Flanagan during this California trip involved unpaid drafts Poulos had written for acceptance by Defendant. Defendant gave Poulos another check for $15,000.00 while Poulos was in California which was to reimburse Poulos for drafts he had covered which had not been paid. Defendant stated that it was after the California trip by Poulos and Flanagan that he decided to stop payment on the check in question because he felt possibly he had paid Poulos more money than he owed him. He stated that he did not advise Poulos or Flanagan while they were in California that he was going to stop payment on the $26,000.00 check because he had not decided yet to do so. It is clear that Flanagan, Plaintiff's officer had no notice of Defendant's intent to dishonor the check in question until after March 26, 1973 when they returned from the California trip.

The testimony of Flanagan presented by deposition indicates that he suspected a problem may exist in regard to the check in question prior to his leaving for California with Poulos. The witness testified as follows:

"Some way Bill (Poulos) came in in a great big hurry to go to California to get something straightened out; that the checks that was deposited weren't going to make it; and this was—something was happening bad and he wanted me to go help him. And I was quite willing, since we were the bank."

Mr. Flanagan's testimony does not reveal when this event occurred, however, Mr. Poulos testified that on March 21, 1973, after the bank closed, that he asked Mr. Flanagan to go to California. Thus, the earliest time it can be estab-

 

lished that the Plaintiff's officer knew of any dispute between Poulos and Defendant which might constitute a defense to the check in question would be after the bank closed on March 21, 1973.

It thus appears that Plaintiff would qualify as a holder in due course for the amount of the advance made in the amount of $1,781.00 against the check and the withdrawals from Poulos' account made prior to the close of business on March 21, 1973. The amount of these withdrawals less the balance in Poulos' account prior to the check in question being deposited is $12,413.01, making the total value given by the Plaintiff from the check in question $14,194.01. This amount exceeds the Plaintiff's ultimate loss after recouping part of their money advanced from its customer, Bill Poulos. Plaintiff possibly is not a holder in due course for sums advanced after the close of business on March 21, 1973.

The defense that Plaintiff violated its own rules by granting credit on the check in question it cleared is not supported by the evidence. Plaintiff's President, Paul Anderson, testified that it depends upon the customer and past dealings. The evidence shows that Mr. Poulos delivered the check in question to Mr. Flanagan in order that he could obtain immediate credit on same and that such credit was allowed by Mr. Flanagan. Mr. Anderson testified that Mr. Flanagan had the authority to act in this manner. The contention raised in Defendant's pleadings that the Uniform Commercial Code does not allow the granting of credit on an instrument prior to final settlement has not been supported by Defendant by specific citation, and in fact is not correct in accordance with 12A Oklahoma Statutes 1971 §§ 4–209 and 4–208 cited previously.

The Court concludes that the Plaintiff is entitled to recover judgment against Defendant in the amount of $12,320.61 which represents its loss herein resulting from Defendant stopping payment on the check in question.

The Plaintiff is entitled to attorney fees in the amount of $3,510.00 pursuant to 12 Oklahoma Statutes 1971 § 936.

The Plaintiff is to prepare a judgment and present same to the Court within ten (10) days from this date.