GUARANTY NATIONAL BANK, a National Banking Association, Appellant,

v.

Luther Joe BEAVER, Appellee.

No. 62842.

Supreme Court of Oklahoma.

Jan. 20, 1987.

John A. Burkhardt, Boone, Smith, Davis & Hurst, Tulsa, for appellant.

Earl W. Arnold, Tulsa, for appellee.

SUMMERS, Justice.

This case involves construction of 12A O.S. 1981 § 3–403, a provision of the Okla-

homa Uniform Commercial Code. Along with his corporation, defendant Beaver was sued individually on a promissory note signed:

Spring Mountain Investment, Inc. (typed)
Luther Joe Beaver (signed)
Luther Joe Beaver (typed)

Query: In the suit by a Bank who was the assignee of the note, can Beaver show by parol evidence that his signature was as an authorized representative of the corporation rather than as an individual? The trial court held that he could, and gave the bank judgment only against the corporation. Bank appealed and the Court of Appeals reversed, making Beaver personally liable. Having previously granted certiorari we now affirm the trial court and reinstate the original judgment, modifying only the attorneys' fee award.

Here are the facts. In those heady days of late 1981 Beaver and one Nieman struck a deal in the oil patch. Nieman would sell and Beaver would buy a 25 percent working interest in a Creek County oil well. The purchase price was $40,825.00. Beaver's personal note, signed "Luther Joe Beaver", in that amount was accepted by Nieman. Nieman took Beaver's note to the Guaranty National Bank, the plaintiff/appellant herein, as Beaver understood he would, and borrowed $30,000.00, pledging the note as collateral. Beaver and Nieman then had some conversation about Beaver replacing the note with one in the name of his corporation, Spring Mountain Investment, Inc. The bank, by its Senior Vice-President, allowed Nieman to withdraw the first note, void it, obtain another note in the same amount signed as set out in the second sentence of this opinion, and deliver it to the bank as substituted collateral for Nieman's debt.

Here the testimony diverged as to what the parties intended by substituting the so-called "corporate" note for the earlier clearly personal one. The banker maintained it was understood that Beaver was to remain individually liable. An attorney for Beaver, however, testified that he talked by phone to the banker who indicated the bank would accept "a corporate note on behalf of the corporation instead of the personal note on behalf of Mr. Beaver." (Tr. p. 152) The trial court allowed this testimony under 12A O.S. 1981 § 3–403(2)(b) of the Commercial Code, and ruled that the bank had accepted a corporate obligation in place of Beaver's personal one. That section provides as follows:

"Section 3–403. Signature by Authorized Representative

(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument.

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) *except as otherwise established between the immediate parties*, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity. (emphasis added)

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity."

All agree that the "Spring Mountain Investment, Inc." note does not show that Beaver signed in a representative capacity, e.g. as President or other officer of the corporation. Therefore Beaver must be found personally obligated "except as [may be] otherwise established between the immediate parties." The trial court found that the evidence supported a finding that otherwise established Beaver's lack of per-

sonal obligation on the substitute note. The bottom line question then is whether the bank was an "immediate party" against which parol evidence might be used to "otherwise establish" Beaver's lack of personal obligation. The Court of Appeals said no, that as a matter of law the bank was not an immediate party, and Beaver's signature on the note without showing his representative capacity made him individually liable.

The bank contends that the immediate parties are those whose names appear on the instrument, in other words the maker or payor and the payee, not the bank to whom the note was assigned, citing *American Exchange Bank v. Cessna*, 386 F.Supp. 494 (N.D. Okla.1974). Beaver urges that *Moore v. White*, 603 P.2d 1119 (Okl.1979) calls for a broader interpretation of "immediate parties" than that given by the Court of Appeals.

In *Cessna*, supra, the corporate check was signed by the President but without any corporate capacity shown thereon, as in our case here. The check was endorsed by the payee and transferred to the American Exchange Bank. The corporation stopped payment on the check and the bank sued the signator individually. The signator offered to prove by parol evidence that he signed it only on behalf of the corporation. The Court found that because the suit was not one between the immediate parties the defendant could not use parol evidence to avoid the rule imposing personal liability.

In *Moore v. White*, supra, while we acknowledged that a guarantor of an instrument was not accorded "immediate party" status under § 3–403(2)(b) by the fact of the guaranty alone, we allowed him to be so considered in an action brought by him by way of subrogation against the obligor whose note he guaranteed, and held that parol evidence was admissible to establish the obligor's true capacity as signator of the note. We do not find either case inconsistent with the other nor with the pronouncement we are about to make.

In *North Carolina Equipment Co. v. Debruhl*, 220 S.E.2d 867 (N.C.1976) the court quoted as follows from *White and Summers, Uniform Commercial Code* § 13–5, P. 406:

"When the plaintiff who sues the agent personally is one who dealt directly with the agent, and the signature either names the principal or indicates the representative capacity, 3–403(b)(2) permits the agent to introduce evidence of his agency status to avoid personal liability."

"Party" is defined in the code as follows: 12A O.S. 1981 § 1–201(29) 'Party' as distinct from 'third party' means a person who has engaged in a transaction or made an agreement within the provisions of the Uniform Commercial Code.

Black's Law Dictionary, Revised 4th Edition, says this about "immediate" at p. 884:

"Next in line or relation; directly connected; not secondary or remote.... [N]ot separated by the intervention of any intermediate object, cause, relation, or right...."

The first note was made between "Luther Joe Beaver" payor, and "David L. Nieman," payee and as per the parties' understanding was delivered to the bank as collateral for the advancement made to Nieman. Thus when the bank became the owner and holder of the note Beaver, individually, was the obligor to whom the bank could look if Nieman defaulted. Then pursuant to conversations between Beaver, Beaver's attorney, Nieman, and the banker, the banker allowed Nieman to remove the note, mark it void, obtain a new note executed by Spring Mountain Investment, Inc., (signed) Luther Joe Beaver, payable to Sample Resources, Inc. (Nieman's corporation), and substitute the new note as collateral for the original loan to Nieman. Here, unlike in *Cessna*, the events surrounding the substitution of the note and signing on behalf (or not) of Spring Mountain, Inc. all took place during the time the bank was the owner of the note. After whatever conversations with the banker were had, withdrawal of the old note and its replace-

ment by the new one occurred with his consent.

We fail to see how the bank was not an immediate party to the transaction substituting the Spring Mountain note for the earlier one. Section 3–403(2)(b) is designed to insulate an innocent acquirer, a holder in due course, from verbal contentions made by an original party to an instrument as to what the parties intended, when there is no way the innocent holder could have been on notice of such contentions. *Financial Associates v. Impact Marketing Inc.*, 90 Misc.2d 545, 394 N.Y. S.2d 814 (1977); *National Investment and Security Co. v. Corey*, 222 Mass. 453, 111 N.E. 357 (1916). To allow the bank to exclude the testimony surrounding the substitution of notes here would allow the bank to willingly participate in a substitution of collateral without being accountable for what, if anything, it may have communicated to another party in the course of the substitution. As a person "engaged in a transaction or [having] made an agreement within the provisions of" the U.C.C. the bank was a party to the substitution. § 1–201(29), supra. As one owning the note, communicating with the attorney for the maker, surrendering it for change, and accepting the substitute note as re-executed we find it to have been an immediate party to the substitution. The trial court properly allowed the parol testimony regarding the substitution of the note. It follows, then, that the record contains competent evidence to support the ruling of the trial court.

Bank urges in its brief that the trial court erred in not piercing the corporate veil and refusing to admit evidence tending to show that Spring Mountain Investment,

Inc. was a sham corporation. Bank, however, did not originally plead allegations of such corporate fraud, nor did it amend its pleadings to include such claims. The record reveals no pretrial order [1] which, had it included such issue, would have superceded the pleadings.[2] At trial the court followed the general rule that issues not raised by the pleadings nor pretrial orders are not before the court. *Rider v. Shull*, 170 Okl. 630, 41 P.2d 484 (1935). A party may not bring his action on one theory and then seek to recover at trial on another. *Colonial Refining Co. v. Lathrop*, 64 Okl. 47, 166 P. 747 (1917).

At trial Nieman was questioned by his counsel on *his* intent as to who was obligated to pay the substituted note. The court sustained Beaver's objection on the basis that it called for a legal conclusion, and invaded the province of the court sitting as trier of fact. If this was error, as well it may have been, (see *Jones v. Anderson*, 198 Okl. 304, 178 P.2d 78 [1947] ) it will not serve to require reversal. At numerous other times in the development of his testimony Nieman was permitted to testify that he understood Beaver would still be responsible (Tr. pp. 26, 54, 60). It had to be clear to the trier of fact that Nieman's position at trial was essentially that of the bank. The error, if any, was harmless.

Finally, bank urges that the trial court allowed excessive attorneys' fee to Beaver as prevailing party, particularly with regard to fees due attorney Arnold. Although originally representing both Beaver and Spring Mountain Investment, Inc. Arnold withdrew as counsel for Beaver when it became apparent he would be a witness at the trial. Beaver was allowed a fee for Arnold of $18,557.50 based on 285.5 hours at $65.00 per hour. Arnold's Exhibit "A", however, on which the fee award was

1. A proposed pretrial order submitted by counsel for the bank alluded to the issue; a proposed pretrial order submitted by counsel for Beaver omitted it. Neither was signed by the trial judge.

2. Rule 5.g., Rules of the District Courts of Oklahoma, states in pertinent part with respect to this issue:

"... [T]his (pretrial conference) order shall control the subsequent course of the action. The pleadings shall be deemed to have been amended to conform to it, and unless stated in the order, it shall supersede the pleadings."

based, shows 14.25 hours spent in trial. Bank points out the obvious error there, since at trial Arnold only represented Spring Mountain Investment, Inc., a non-prevailing party. Otherwise the fee allowed is supported by competent evidence, and is within the tolerances of *State ex rel. Burk v. Oklahoma City,* 598 P.2d 659 (Okl. 1979).

THE OPINION OF THE COURT OF APPEALS IS VACATED; THE ATTORNEY'S FEE ALLOWED BEAVER FOR ARNOLD'S SERVICES IS REDUCED TO $17,600.00; THE TRIAL COURT IS DIRECTED TO SO MODIFY ITS JUDGMENT; IN ALL OTHER RESPECTS THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.

DOOLIN, C.J., and HODGES, LAVENDER, OPALA, WILSON and KAUGER, JJ., concur.

HARGRAVE, V.C.J., and SIMMS, J., dissent.